IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

KISHA EVANS, individually, )
and as next friend of TME, and TME, a )
minor child, )
 )
         Plaintiffs, )
 )
v. ) Case No. 08-CV-547-JHP
 )
CITY OF TULSA, STEPHEN BOYES, )
TIMOTHY PIKE and DAVID HALE, )
 )
         Defendants. )

### ORDER and OPINION

Before the Court is Defendants' Motion to Dismiss [Docket No. 17], Plaintiffs' Response in Opposition [Docket No. 20], and Defendants' Reply [Docket No. 23]. For the reasons set forth below Defendants' Motion to Dismiss is granted in part and denied in part.

### I. Motion to Dismiss

**A. Facts**

On the evening of April 12, 2008, Plaintiffs allege TME, a 16-year-old African American male, was walking through the parking lot of the Cobblestone Apartments when he was approached and questioned by the defendant police officers without probable cause. Plaintiffs further allege that once TME turned to walk away from the officers, he was tackled and beaten. TME was charged with resisting arrest, although the charge was eventually dropped.

Plaintiff Kisha Evans, both individually and as next friend of TME, filed suit against the City of Tulsa, and the individual defendants in both their individual and official capacities, pursuant to 42 U.S.C. § 1983. Plaintiffs also assert state law claims for intentional infliction of

1

emotional distress, false arrest, abuse of process, and negligent hiring, training and supervision by the City. Defendants filed the instant Motion to Dismiss arguing that Plaintiffs have not stated a cause of action and that the officers, in their individual capacities, are entitled to qualified immunity based on the existence of arguable probable cause and because they did not violate clearly established law.

### B. Discussion

Pursuant to Rule 12(b)(6), a party may move to dismiss a claim for relief on the basis that it fails to state a claim upon which relief may be granted. In undertaking a Rule 12(b)(6) analysis, the Court accepts all well-pleaded allegations in a complaint as true and construes them in the light most favorable to the plaintiff. *See Ridge at Redhawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In order to survive a 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007). This does not mean the factual allegations themselves must be plausible, rather it means that relief must follow from the facts alleged. *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). A complaint that omits some necessary facts may still satisfy this requirement "so long as the court can plausibly infer the unarticulated assumptions." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). The factual allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1965.

### 1. Qualified Immunity

When confronted with a claim of qualified immunity, a court must go through the two-step process set out in *Saucier v. Katz*, 533 U.S. 194 (2001). First, the Court must ask the

threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[1] *Saucier*, 533 at 201. If this question is answered in the affirmative, the next step "is to ask whether the right was clearly established." *Id*. If there was no constitutional violation, or if there was a violation but the right was not clearly established, the officer is entitled to qualified immunity. In *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009), the Supreme Court held that lower courts are allowed, but not required, to decide the "clearly established" prong without consideration of the first prong.

Whether the force used to effectuate an arrest violates an individual's Fourth Amendment rights is analyzed under the 'objective reasonableness' standard. *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005)(quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). This reasonableness inquiry turns on several factors, including the alleged crime's severity, the threat a suspect poses, and the suspect's efforts to resist or evade arrest. *Id*. In essence these factors "evaluate the force used in a given arrest or detention against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case. *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007).

Plaintiffs argue the application of these factors to the instant facts demonstrate the amount of force used by the officers was objectively unreasonable. Plaintiffs allege in the Complaint that TME was a 16-year-old African American male. Plaintiffs further allege TME weighed approximately 145 pounds, and had no history of violence, criminal conduct, or misbehavior at school. "On the evening of April 12, 2008, after watching a movie with his

---

[1] Because this Court is addressing the issue at the motion to dismiss stage and not the summary judgment stage, Plaintiff is only required to allege a constitutional violation that is plausible on its face.

friends, TME started walking home. Nothing about his appearance or demeanor gave rise to even the slightest legitimate cause to believe he was doing something improper." Plaintiffs' Complaint at 3. Nonetheless, Plaintiffs assert the three defendant officers, each of whom substantially outweighed TME approached and questioned TME without probable cause. Plaintiffs assert that once TME turned to walk away from the officers, TME was tackled and beaten. Plaintiffs contend x-rays and CT scans reveal the beating was so severe that it caused a "blow-out" fracture of TME's eye socket and bleeding from TME's ear. Plaintiffs assert TME continues to suffer from partial losses of both vision and hearing. TME was charged with resisting arrest, although the charge was eventually dropped. TME contends the defendants "fabricated reasons for the arrest after the fact of the beating, yet still failed to justify the initial arrest." Complaint at 8.

Defendant officers argue the amount of force used in arresting TME was objectively reasonable and their version of events differs significantly. The defendant officers contend "[t]his case involves a 16-year-old runaway who was walking alone at night through a parking lot of an apartment complex in one of the highest crime areas in Tulsa. When TME was approached by police officers (on bicycle patrol), he smelled of marijuana and could not provide the officers with identifying or basic contact information. TME was evasive and ultimately turned and ran from the officers. He was tackled, and Officer Pike struggled to handcuff TME as TME continued to resist." Defendants' Motion to Dismiss at 2.

Accepting Plaintiffs' allegations in the Complaint as true and casting them in a light most favorable to Plaintiffs, the Court concludes Plaintiffs have sufficiently alleged a constitutional violation that is plausible on its face. Plaintiffs have set forth enough factual

4

allegations to raise the Fourth Amendment claims for excessive force and unlawful arrest above the speculative level.

Defendants also refute Plaintiffs' allegations that they fabricated reasons for TME's arrest after the beating and caused false charges to be filed against him. The Fourth Amendment provides in pertinent part, "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation ..." Consequently, "an arrest warrant must be supported by probable cause to comply with the Fourth Amendment. Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Cummisky v. Mines,* 248 Fed.Appx. 962, 966 (10th Cir. 2007)(unpublished), citing *Taylor v. Meachum*, 82 F.3d 1556, 1562 (10th Cir. 1996). "It is a violation of the Fourth Amendment for an arrest warrant affiant to 'knowingly, or with reckless disregard for the truth,' include false statements in the affidavit." *Id.*

The Tenth Circuit Court of Appeals has held that "officers who conceal and misrepresent material facts to the district attorney are not insulated from a §1983 claim for malicious prosecution simply because the prosecutor, grand jury, trial court, and appellate court all act independently to facilitate erroneous convictions. *Pierce v. Gilchrist*, 359 F.3d 1279, 1292 (10th Cir. 2004) citing *Robinson v. Maruffi*, 895 F.2d 649, 655-56 (10th Cir. 1990). "The actions of a police forensic analyst who prevaricates and distorts evidence to convince prosecuting authorities to press charges is no less reprehensible than an officer who, through false statements, prevails upon a magistrate to issue a warrant. In each case the government official maliciously

abuses a position of trust to induce the criminal justice system to confine and then to prosecute an innocent defendant. We view both types of conduct as equally repugnant to the Constitution." *Id*. at 1293.

Again, accepting Plaintiffs' allegations as true, the Court finds Plaintiffs have sufficiently alleged a constitutional violation that is plausible on its face. Plaintiffs have set forth enough factual allegations to raise the §1983 Fourth Amendment claim for malicious prosecution above the speculative level. Having answered the first question in the qualified immunity inquiry regarding these causes of action affirmatively, the Court now moves to the second question.

Even if Defendants' actions were not objectively reasonable, the second prong of the qualified immunity inquiry asks whether Defendants' actions violated clearly established Fourth Amendment protection. *Saucier*, 533 at 201. In other words, would it "be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id*. at 201. Rather, the right must be clearly established in a more particularized sense. *Id*. at 198-99. In order to determine whether Defendant violated a clearly established law, the Court is required to compare the particular situation encountered by Defendants with the facts of previous Tenth Circuit and Supreme Court cases.

"This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent. *Pierce*, 359 F.3d at 1298 citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "*Hope* thus shifted the qualified immunity analysis from a scavenger hunt for prior

cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional . . . The degree of specificity required from prior case law depends in part on the character of the challenged conduct. The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation. See *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002)(noting that the "constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that this conduct cannot be lawful."); cf. *Austin v. Hamilton*, 945 F.2d 1155, 1158 (10th Cir. 1991)("It is only by ignoring the particularized allegations of deplorable violence and humiliation advanced by plaintiffs that defendants are able to argue for qualified immunity.") *Id*. at 1298.

The Court finds case law regarding unlawful arrest and excessive force effectuating an arrest was clearly established at the time of TME's seizure and arrest. Likewise, "the prohibition on falsification or omission of evidence, knowingly or with reckless disregard for the truth, was firmly established as of 1986, in the context of information supplied to support a warrant for arrest. *Pierce*, 359 F.3d at 1298 citing *Stewart v. Donges*, 915 F.2d 572, 581-583 (10th Cir. 1990). As the Tenth Circuit has noted, "qualified immunity will not be granted if government defendants fail to make "reasonable applications of the prevailing law to their own circumstances." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001)(quoting *Murrell v. Sch.Dist.No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999)).

### 2. Oklahoma Governmental Tort Claims Act

The Oklahoma Governmental Tort Claims Act ("GTCA") mandates that "[a]ny person having a claim against ... a political subdivision within the scope of Section 151 *et seq*. of this

title shall present a claim to the ... political subdivision for any appropriate relief including the award of money damages." 51 Okla. Stat. §156(A). A claim against a political subdivision must be presented in writing and filed with the office of the clerk of the governing body. *Id*., §156(D). Section 157(A) states that "[a] person may not initiate a suit against the state or a political subdivision unless the claim has been denied in whole or in part." In addition, the GTCA contains limitations provisions. See e.g., 51 Okla. Stat. §156(B)(notice must be given within 1 year), §157(B)(suit must be brought within 180 days of denial of claim). A pre-suit notice of claim that complies with the GTCA is necessary to invoke the power of the court. *State v. Dixon*, 912 P.2d 842, 844 (Okla. 1996).

Defendants argue Plaintiffs' state law claims should be dismissed for failure to comply with the requirements of the GTCA and that substantial compliance is insufficient. Specifically, Defendants contend that Plaintiffs' assertion they "made complaints to the Mayor and the Internal Affairs Division," does not satisfy the notice requirement of the GTCA.

A claimant under the GTCA substantially complies with the notice requirement if the governmental entity is not prejudiced by the form of notice provided and the information provided satisfies the purposes of the statute. *Wallace v. Board of County Com'rs of Tulsa County*, 15 P.3d 985 (Okla. Civ. App. 2000), cert denied (substantial compliance with notice provisions of the GTCA sufficient and authority claimed no prejudice from notice as given); *Strong v. Oklahoma City Public Schools, Indep. School Dist. No. 89*, 941 P.2d 538 (Okla.Civ.App. 1997). In the instant case, Plaintiffs argue they complained to the mayor of the City of Tulsa, and the Internal Affairs Division of the Tulsa Police Department following the incident in question. Further, Plaintiffs contend they cooperated fully in the Internal Affairs

Division investigation. Accepting these allegations as true, there would be substantial compliance sufficient to fulfill the purposes of the statute: to give the city the opportunity to promptly investigate the claim, to repair any dangerous conditions, to quickly settle the claim if it was meritorious, and to prepare to meet any potential liability. See *Wallace v. Board of County Com'rs of Tulsa County*, 15 P.3d at 989. Because the dismissal of governmental tort claims is premature where parties dispute the beginning date of the 180-day limitation period for commencement of such an action, the Court reserves this issue for the summary judgment stage of this proceeding. See *Cortright v. City of Oklahoma City, Okla.*, 951 P.3d 93 (Okla. 1997).

Defendants also argue Plaintiffs' claim was never expressly denied. The GTCA prohibits a claimant from initiating a tort action until the 90-day period expires unless the governmental entity acts upon the claim in a manner that denies the claim before the 90-day period expires. *Hathaway v. Oklahoma*, 49 P.3d 740, 743 (Okla. 2002). This prohibition serves the interest of the governmental entity by allowing it a specific period to consider and act upon the claim before the expense of suit is imposed upon it. *Id.* If a claim under the GTCA is neither denied, approved, nor settled prior to 90 days after notice is filed, the claim is deemed denied by operation of law and the limitation period begins to run. *Mansell v. City of Lawton*, 901 P.2d 826 ( Okla. 1995). Because an express denial is not required, and because the parties dispute the beginning of the limitation period, this issue is likewise premature for resolution at this stage of the proceeding.

### 3. Standing

Defendants argue the plaintiff, Kisha Evans, cannot bring this action in her individual capacity because it is brought pursuant to §1983 and she has not pled a separate tort claim. As

9

noted supra, the tort claims of Plaintiff are still viable at this juncture. Accordingly, Plaintiff, Kisha Evans may seek relief in her individual capacity for the recovery of medical expenses and consequential damages derived from the injury to her child, TME. See e.g., *Independent School Dist. I-29 v. Crawford*, 688 P.2d 1291 (Okla. 1984); *Brown v. Jimmerson*, 862 P.2d 91, 93 (Okla. App. 1993). [2] Plaintiff is required, however, to aggregate her claims under the GTCA. See *Carlson v. City of Broken Arrow*, 844 P.2d 152 (1992).

Defendants also argue because the City is a named defendant, it is redundant to sue the defendant officers in their official capacities. The Court disagrees and finds that while a judgment against the officers in their official capacities may ultimately be satisfied by the City, it is Plaintiffs' prerogative to initiate this action against the officers in both their individual and official capacities. See *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978).

**4. The Claims Against the City of Tulsa**

Plaintiffs concede the City cannot be liable for negligent hiring, training and supervision, or ratification of the alleged actions of the individual officers. Accordingly, these causes of action are dismissed. However, Plaintiffs do assert they have sufficiently alleged a "custom of using excessive force by City of Tulsa police officers, and the open acceptance (and endorsement) of that force by the City of Tulsa policy makers." Plaintiffs point to numerous examples they allege demonstrate a "continuing, persistent and widespread" custom of racially motivated use of excessive force. Construing Plaintiffs' factual allegations as true, and

---

[2] Defendants also contend TME lacks standing to bring this action in his own name. Plaintiffs agree, but wish for TME to remain as a nominal party only.

analyzing them in the light most favorable to Plaintiffs, the Court finds Plaintiffs have pled factual allegations sufficient to withstand the Defendants' Motion to Dismiss. Although custom cannot be established by past instances of alleged misconduct alone, Plaintiffs have further asserted the past conduct was permitted or condoned by the City. See *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999). Ultimately, however, Plaintiffs must also demonstrate the other incidents involved similarly situated individuals who were mistreated in a similar way. See *Carney v. City and County of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).

### III. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss is Granted in part and Denied in part in accordance with this Opinion and Order.

**IT IS SO ORDERED**.

_____
James H. Payne
United States District Judge
Northern District of Oklahoma